1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| CHRISTOPHER SEAN MORIARTY, | ) | Case No. CV 13-0037 RNB |
|---|---|---|
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1] | ) ) ) | |
| Defendant. | ) ) | |

The Court now rules as follows with respect to the three disputed issues listed in the Joint Stipulation.[2]

---

[1]     The Acting Commissioner is hereby substituted as the defendant pursuant to Fed. R. Civ. P. 25(d).  No further action is needed to continue this case by reason of the last sentence of 42 U.S.C. § 405(g).

[2]     As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined
(continued...)

1

**A.      Reversal is not warranted based on the ALJ's alleged failure to make a proper step three determination (Disputed Issue No. 1).**

Disputed Issue No. 1 is directed to the ALJ's determination at step three of the Commissioner's sequential evaluation process that plaintiff did not have a condition that met or equaled the requirements of a listed impairment.  (See Jt Stip at 4-10.)

At step three of the sequential evaluation process, the ALJ must determine whether a claimant's impairment or combination of impairments meets or equals a listed impairment set out in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  To "meet" a listed impairment, the claimant must establish that he satisfies each element of the listed impairment in question.  See Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); Tackett, 180 F.3d at 1099.  To "equal" a listed impairment, the claimant "must establish symptoms, signs, and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." Tackett, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526).[3]

Here, plaintiff contends that the ALJ erred in his step three determination in two respects.  First, plaintiff contends that the ALJ erred by failing to address whether plaintiff met the requirements of Listing 1.04A (Disorders of the Spine).[4]  (See Jt Stip

---

[2](...continued)
which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

[3]      In Disputed Issue One, plaintiff does not contend that he had an impairment or combination of impairments that "equaled" a listed impairment.

[4]      Listing 1.04A requires "evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)
(continued...)

at 5.)   Specifically, plaintiff points to evidence of an MRI of his lumbar spine showing "visible impingement on the exiting right L4 nerve root."  (See AR 424.) However, other than referencing this evidence, plaintiff has made no attempt to proffer evidence that his condition satisfied each element of Listing 1.04A, such as evidence of limitation of motion of the spine, motor loss, sensory or reflex loss, and positive straight-leg raising.  Accordingly, the Court rejects plaintiff's contention that the ALJ erred by failing to address whether plaintiff's condition met the requirements of Listing 1.04A.  See Bower v. Astrue, 2011 WL 5057054, at *6 (W.D. Wash. Oct. 3, 2011) ("[E]ven if the . . . MRI showed nerve root impingement, plaintiff would still not meet Listing 1.04(A) due to the lack of documentation of the other criteria of the listing.").

Second, plaintiff contends that the ALJ erred by failing, before making his step three determination, to obtain a consultative examination or testimony from a medical expert.  (See Jt Stip at 6.)  However, the Ninth Circuit has rejected the argument that an ALJ has a duty to gather additional medical evidence before making a step three determination where (1) the ALJ does not indicate that he found the record insufficient to properly evaluate the evidence; and (2) the evidence does not consistently favor a finding of disability under a listing.  See Lewis v. Apfel, 236 F.3d 503, 514-15 (9th Cir. 2001).  Here, the ALJ did not indicate that he found the record insufficient to properly evaluate the evidence; nor did the evidence consistently favor a finding of disability under Listing 1.04A.

//

//

//

_____

[4](...continued)
accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

**B.   Reversal is not warranted based on the ALJ's alleged failure to properly evaluate the medical opinion evidence (Disputed Issue No. 2).**

Disputed Issue No. 2 is directed to the ALJ's evaluation of the medical opinions of Dr. Guzman, Dr. Zeslotarski, Dr. Castillo-Ruiz, and physician's assistant Eric Hixon.[5]  (See Jt Stip at 10-24.)

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual.  See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991).  Where, as here, the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record.  See, e.g., Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

---

[5]   Plaintiff also mentions the opinion of Dr. Ratner, an examining psychologist, but proffers no argument directed to the ALJ's evaluation of that opinion.  (See Jt Stip at 12.)

4

1

        a.    <u>Dr. Guzman and Dr. Zeslotarski</u>

2         Dr. Guzman, plaintiff's treating physician, completed two mental residual

3 functional capacity questionnaires. In the first questionnaire, completed in September

4 2008, Dr. Guzman opined that plaintiff's depression required marked or extreme

5 limitations in all designated areas of mental functioning; Dr. Guzman also assigned

6 plaintiff a GAF score of 70.[6]  (<u>See</u> AR 336-40.)  In the second questionnaire,

7 completed in October 2009, Dr. Guzman opined that plaintiff's depression required

8 mild, moderate, or marked limitations in most designated areas of mental functioning,

9 as well as an extreme limitation in plaintiff's ability to complete a normal workday

10 and workweek without interruption from psychologically based symptoms; Dr.

11 Guzman also assigned plaintiff a GAF score of 60.[7]  (<u>See</u> AR 352-55.)

12         Dr. Zeslotarski, plaintiff's treating physician, completed a Mental Medical

13 Source Statement in which he opined that plaintiff's major depression would render

14 plaintiff unable to meet competitive standards in several areas of mental functioning.

15 Dr. Zeslotarski also assigned plaintiff a GAF score of 55. (<u>See</u> AR 417-22.)

16         The ALJ evaluated, in combination, the opinions of Dr. Guzman and Dr.

17 Zeslotarski as follows.  The ALJ gave "little weight" to Dr. Guzman's opinion as

18 reflected in his two questionnaires because "GAF scores of 60-70 [were] inconsistent

19 with his residual functional capacity findings of extreme to marked limitations." (<u>See</u>

20 AR 22.)  Likewise, the ALJ gave "little weight" to Dr. Zeslotarski's opinion because

21 a GAF score of 55 was consistent with the ability to perform simple repetitive tasks

22 and inconsistent internally with the residual functional capacity findings in the

23

24                   ————————

25       [6]    A GAF score of 61-70 indicates "some mild symptoms . . . but generally

26 functioning pretty well."  <u>See</u> American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 32 (4th ed.).

27       [7]    A GAF score of 51-60 indicates "moderate symptoms . . . [or] moderate

28 difficulty in social, occupational, or school functioning."

1    remainder of Dr. Zeslotarski's report.  (See AR 22-23.)  Finally, the ALJ found that

2    Dr. Guzman's and Dr. Zeslotarski's residual functional capacity assessments were

3    both unsupported by the evidence, which indicated only mild limitations in activities

4    of daily living.  The ALJ noted, for example, that plaintiff went grocery shopping,

5    used public transit, attended recovery meetings and medical visits, and participated

6    in transitional housing assignments.  (See AR 23.)

7        The Court finds that these were legally sufficient reasons on which the ALJ

8    could properly rely to accord little weight to Dr. Guzman's and Dr. Zeslotarski's

9    opinions.  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly

10   rejected treating physician's opinion of disability that was inconsistent with

11   claimant's level of activity); Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595,

12   603 (9th Cir. 1999) (holding that ALJ properly rejected treating medical opinions that

13   had internal inconsistencies).

14

15       b.    Dr. Castillo-Ruiz

16       Dr. Castillo-Ruiz, plaintiff's treating physician, completed a Medical Source

17   Statement (Physical) in which he opined that plaintiff's history of chronic back pain

18   rendered plaintiff able to lift 20 pounds occasionally and frequently, stand or walk for

19   less than 2 hours per 8 hour workday, and sit for less than 6 hours per 8 hour

20   workday. (See AR 341.)  The ALJ gave "little weight" to the portions of Dr. Castillo-

21   Ruiz's opinion positing limitations in standing, walking, and sitting, on the ground

22   that "there is no medical evidence supporting such a restrictive residual functional

23   capacity."  (See AR 23.)  The Court finds that this was a legally sufficient reason on

24   which the ALJ could properly rely to give little weight to those portions of Dr.

25   Castillo-Ruiz's opinion.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)

26   ("The ALJ need not accept the opinion of any physician, including a treating

27   physician, if that opinion is brief, conclusory, and inadequately supported by clinical

28   findings."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that

1   treating physician's opinion that was "unsupported by rationale or treatment notes,

2   and offered no objective medical findings" was properly rejected).

3

4          c.   Mr. Hixon

5          Mr. Hixon, a physician's assistant, completed a Medical Source Statement

6   (Physical) in which he opined that plaintiff's lower back pain rendered plaintiff able

7   to lift 50 pounds occasionally and 20 pounds frequently, stand or walk for 6 hours per

8   8 hour workday, and sit for less than 6 hours per 8 hour workday with the option to

9   alternate positions. (See AR 358-59.) However, the Statement was signed not only

10  by Mr. Hixon, but also by Dr. Schwartz. (See id.) The ALJ attributed the opinion to

11  Dr. Schwartz and found it "fully credible" and gave it "great weight." (See AR 23.)

12  Plaintiff contends that (1) the ALJ erroneously attributed the opinion to Dr. Schwartz

13  rather than to Mr. Hixon; and (2) since the opinion was authored by Mr. Hixon, who

14  is a physician's assistant rather than an "acceptable medical source," the opinion was

15  not entitled to great weight.[8] (See Jt Stip at 15-16.)

16         The Court disagrees with both of plaintiff's contentions. First, in the Court's

17  view, the ALJ's attribution of the opinion to Dr. Schwartz, who clearly signed the

18  opinion, was a rational interpretation of the evidence. It is not the Court's role to

19  second-guess an ALJ's rational interpretation of the evidence merely because plaintiff

20  is able to proffer an alternative rational interpretation. See Burch v. Barnhart, 400

21  F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one

22  rational interpretation, it is the ALJ's conclusion that must be upheld.").

23  //

24  ─────────────

25         [8]    See 20 C.F.R. 416.913(a) (listing acceptable medical sources, such as

26  licensed physicians); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (noting

27  that the medical opinions of workers, such as physician's assistants, who are not
    acceptable medical sources generally are not entitled to the same deference as the

28  opinions of physicians).

7

1   Second, even if the Court had agreed with plaintiff's contention that the

2   opinion was authored solely by Mr. Hixon, the Court still would have found that the

3   fact that Mr. Hixon was not an acceptable medical source would not in itself have

4   constrained the ALJ from crediting that opinion over other opinions of record.  See

5   Social Security Ruling 06-03p, at *5 ("[D]epending on the particular facts in a case,

6   . . . an opinion from a medical source who is not an 'acceptable medical source' may

7   outweigh the opinion of an 'acceptable medical source,' including the medical

8   opinion of a treating source.").[9]

9

10   **C.   The ALJ failed to make a proper adverse credibility determination with**

11   **respect to plaintiff's subjective symptom testimony (Disputed Issue No. 3).**

12   Disputed Issue No. 3 is directed to the ALJ's adverse credibility determination

13   with respect to plaintiff's subjective symptom testimony.  (See Jt Stip at 24-35.)

14   An ALJ's assessment of pain severity and claimant credibility is entitled to

15   "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.

16   Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  Under the "Cotton test," where the

17   claimant has produced objective medical evidence of an impairment which could

18   reasonably be expected to produce some degree of pain and/or other symptoms, and

19   the record is devoid of any affirmative evidence of malingering, the ALJ may reject

20   the claimant's testimony regarding the severity of the claimant's pain and/or other

21   symptoms only if the ALJ makes specific findings stating clear and convincing

22   reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see

23   also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12

24   F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991)

25   (en banc).

26

27   [9]   Social Security Rulings are binding on ALJs.  See Terry v. Sullivan, 903

28   F.2d 1273, 1275 n.1 (9th Cir. 1990).

8

Here, plaintiff testified that he cannot work because of emotional problems caused by depression and chronic pain in his lower back and right leg.  (See AR 75-76, 78.)  The ALJ stated that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment.  (See AR 22.)

However, the ALJ proffered no specific reasons in support of this adverse credibility determination, even though Ninth Circuit jurisprudence requires that an ALJ specifically explain how the record evidence undermines a claimant's subjective symptom testimony.  See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying 'what testimony is not credible and what evidence undermines the claimant's complaints.'") (quoting Lester, 81 F.3d at 834), cert. denied, 552 U.S. 1141 (2008); Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989) ("In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision."); see also Robbins v. Social Sec. Admin., 466 F.3d 880, 884-85 (9th Cir. 2006) ("We note that the ALJ did not provide a narrative discussion that contains specific reasons [for his adverse credibility determination]. . . .While an ALJ may certainly find testimony not credible and disregard it . . ., we cannot affirm such a determination unless it is supported by specific findings and reasoning.") (citations and internal quotation marks omitted).

Although the Commissioner proffers various reasons on which the ALJ could have relied to support an adverse credibility determination (see Jt Stip at 28-31), the ALJ did not expressly invoke any of these reasons for not crediting plaintiff's subjective symptom testimony.  Accordingly, the Court is unable to consider any of those reasons in order to uphold the ALJ's adverse credibility determination.  See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Ceguerra v. Sec'y of Health

1  and Human Svcs., 933 F.2d 735, 738 (9th Cir. 1991).

2      The Court therefore finds and concludes that reversal is warranted here because

3  the ALJ failed to make a proper adverse credibility determination with respect to

4  plaintiff's subjective symptom testimony.

5

6                          **CONCLUSION AND ORDER**

7      The law is well established that the decision whether to remand for further

8  proceedings or simply to award benefits is within the discretion of the Court. See,

9  e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan,

10 888 F.2d 599, 603 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.

11 1981). Remand is warranted where additional administrative proceedings could

12 remedy defects in the decision. See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th

13 Cir. 1984); Lewin, 654 F.2d at 635. Remand for the payment of benefits is

14 appropriate where no useful purpose would be served by further administrative

15 proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record

16 has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986);

17 or where remand would unnecessarily delay the receipt of benefits, Bilby v.

18 Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

19     Weighing in favor of a remand for further administrative proceedings here is

20 the fact that this is not an instance where no useful purpose would be served by

21 further administrative proceedings. Rather, additional administrative proceedings

22 conceivably could remedy the defects in the ALJ's decision.

23     The Court is mindful of Ninth Circuit case authority for the proposition that

24 "the district court should credit evidence that was rejected during the administrative

25 process and remand for an immediate award of benefits if (1) the ALJ failed to

26 provide legally sufficient reasons for rejecting the evidence; (2) there are no

27 outstanding issues that must be resolved before a determination of disability can be

28 made; and (3) it is clear from the record that the ALJ would be required to find the

10

claimant disabled were such evidence credited." See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); see also, e.g., Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000)[10]; Smolen, 80 F.3d at 1292; Varney v. Secretary of Health & Human Servs., 859 F.2d 1396, 1399-1401 (9th Cir. 1988). Under the foregoing case authority, when this test is met, the Court will take the improperly discredited testimony as true and not remand solely to allow the ALJ another opportunity to make specific findings regarding that testimony. This rule applies to improperly discredited subjective symptom testimony. However, in Connett, 340 F.3d at 876, the panel held that the "crediting as true" doctrine was not mandatory in the Ninth Circuit. There, the Ninth Circuit remanded for reconsideration of the claimant's credibility where the record contained insufficient findings as to whether the claimant's testimony should be credited as true. See id.

Based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here. Accordingly, IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.[11]

DATED:  October 16, 2013

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

---

[10]   In Harman, the Ninth Circuit noted that this three-part test "really constitutes a two part inquiry, wherein the third prong is a subcategory of the second." Harman, 211 F.3d at 1178 n.7.

[11]   It is not the Court's intent to limit the scope of the remand.

11